UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FIT AND FUN PLAYSCAPES, LLC,

                              Plaintiff,

        -against-

SENSORY PATH, INC., HOLLY CLAY, and
MADISON BARKER,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___01/12/2022___

No. 19 Civ. 11697 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Fit and Fun Playscapes, LLC ("FAF") commenced the instant action against Defendants Sensory Path, Inc. ("SPI"), Holly Clay, and Madison Barker (collectively, "Defendants"), asserting a copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, for graphic designs of stencils and decals that help reduce sensory stimulation and promote movement in schoolchildren. Presently before the Court is Defendants' motion to dismiss or transfer the case to the Northern District of Mississippi, a court in which they contend there is another pending duplicative action that was filed first approximately three months before the instant action. (ECF No. 36.) For the following reasons, the Court GRANTS Defendants' request to transfer this case.

## BACKGROUND

### I.  The Mississippi Action

On September 28, 2019, SPI filed a lawsuit in the Northern District of Mississippi (hereinafter, the "Mississippi Court") against FAF and Pamela Gunther (FAF's founder and president) asserting claims for: (1) declaratory judgment of non-infringement of copyright; (2) common law trademark infringement; (3) unfair competition and false designation of origin, under 15 U.S.C. § 1125(a); (4) statutory unfair competition under Miss. Code Ann. §§ 75-25-1, *et seq.*; and (5) common law unfair competition. (*See Sensory Path, Inc. v. Fit and Fun Playscapes, LLC,*

*et al*, No. 3:19-cv-219-GHD-RP, ECF No. 1 (N.D. Miss. Sept. 28, 2019) (hereinafter, the "Mississippi Action").)

On November 15, 2019, FAF and Gunther filed a motion to dismiss SPI's complaint for lack of personal jurisdiction and improper venue. (Mississippi Action, ECF No. 10.) After a period of limited jurisdictional discovery, on September 3, 2020, the Mississippi Court granted in part, denied in part FAF and Gunther's motion. *See Sensory Path Inc. v. Fit & Fun Playscapes LLC*, No. 3:19-CV-219-GHD-RP, 2020 WL 5260390, at *1 (N.D. Miss. Sept. 3, 2020). Specifically, the Mississippi Court dismissed SPI's request for declaratory judgment of non-infringement of copyright for lack of personal jurisdiction over FAF and Gunther because "[t]here [were] no activities documented in the record that were undertaken by [FAF and Gunther] in Mississippi[,] . . . aside from two cease-and-desist letters, which [were] insufficient . . . to support jurisdictional control" over them. *Id.* at *6. The Mississippi Court denied the motion to dismiss in all other respects. *Id.*

On September 17, 2020, FAF and Gunther filed an answer asserting five counterclaims against SPI, including for (1) declaratory judgment of non-infringement, no unfair-competition, and no false designation of origin and for trademark invalidity and unenforceability because "sensory path" is generic; (2) declaratory judgment of non-infringement, no unfair-competition, and no false designation of origin and for trademark invalidity and unenforceability because "sensory path" is descriptive with no acquired distinctiveness; (3) declaratory judgment of no unfair competition or false designation of origin; (4) false designation of origin and false representation of fact under the Lanham Act, 15 U.S.C. § 1125(a)(1); and (5) common law unfair competition. (Mississippi Action, ECF No. 78); *see also id.*, ECF No. 82 (FAF and Gunther filed an amended answer on September 25, 2020, that asserted the same counterclaims).)

On November 11, 2020, FAF and Gunther filed a motion for summary judgment against SPI's remaining claims against them. (*Id.*, ECF No. 92.) On November 24, 2020, SPI filed a motion to stay the proceedings in the Mississippi Court so that it could file a motion to dismiss or transfer FAF's claim for copyright infringement in this Court. (*Id.*, ECF No. 97.) On December 18, 2020, the Mississippi Court granted SPI's motion to stay, but it ruled that:

> [it] does not wish to stay discovery in this case indefinitely if a ruling by the New York court is not forthcoming in the reasonably near future. Therefore, if a ruling by the New York court remains pending, the undersigned will conduct a status teleconference with counsel for the parties on Tuesday, March 9, 2021 at 10:00 am to discuss whether the discovery stay should be lifted and, as appropriate, the remaining scheduling deadlines.
>
> This stay will not affect the completion of briefing for or consideration of [FAF's] pending summary judgment motion [].
>
> No party to this action shall attempt to use this stay to their respective advantage in the New York action.
>
> If the New York court transfers the New York action to Mississippi and Judge Davidson decides the transferred action should remain in Mississippi, SPI will not oppose [FAF's] motion for leave to amend the counterclaim in this action to include the claims currently pending in the New York action.

(*Id.*, ECF No. 106.)

On October 12, 2021, the Mississippi Court denied FAF and Gunther's motion for summary judgment in all respects. *See Sensory Path Inc. v. Fit & Fun Playscapes LLC*, No. 3:19-CV-219-GHD-RP, 2021 WL 4768247, at *1 (N.D. Miss. Oct. 12, 2021). The next day, the Mississippi Court lifted the stay "in the interest of the efficient and timely management of its own docket" because the instant motion in this Court remained pending. (*Id.*, ECF No. 120.)

## II. The Instant Action

On December 20, 2019, about three months after SPI filed the Mississippi Action and a month after FAF filed its motion to dismiss for lack of personal jurisdiction, FAF brought the

instant lawsuit in this Court asserting claims against Defendants for: (1) infringement of copyright under 17 U.S.C. §§ 101, *et seq.*; (2) false designation of origin and false representation of fact under the Lanham Act, 15 U.S.C. § 1125(a)(1); and (3) false advertising under N.Y. Gen. Bus. Law § 350. (Compl., ECF No. 1.) On March 2, 2020, Defendants sought leave to file the instant motion arguing that the instant action and the earlier filed, pending Mississippi Action were duplicative. (ECF No. 11.) FAF opposed such application and sought leave to file an amended complaint. (ECF No. 21.) On October 20, 2020, the Court granted leave to FAF to file an amended complaint and Defendants to file their motion to dismiss. (ECF No. 24.)

On November 5, 2020, FAF filed an amended complaint, in which it reasserted its claim for copyright infringement but withdrew its two other claims for false designation of origin and false representation of fact and false advertising. (Am. Compl., ECF No. 28.) On January 19, 2021, the parties filed their respective briefing on the instant issue: Defendants the instant motion (ECF No. 36), its accompanying memorandum in support ("Motion," ECF No. 37), and their reply ("Reply," ECF No. 39); and FAF its opposition ("Response in Opposition," ECF No. 38) and accompanying exhibits (ECF Nos. 40 and 41). From January 25, 2021, through October 13, 2021, the parties filed supplemental letters supporting their positions on the instant motion. (ECF Nos. 42–47.)

## LEGAL STANDARD

### I. First-Filed Rule

In moving to dismiss, Defendants rely principally on the "first-filed rule," which "states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks omitted). The Supreme Court views the first-filed rule as "wise judicial administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation. . . ." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952). The rule "avoids duplicative litigation by adhering to the inherently fair concept that the party who commenced the first suit should generally be the party to attain its choice of venue." *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995); *accord Spotless Enterprises Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006). The "rule," however, is not "an invariable mandate," but instead a presumption in favor of proceeding in the forum where the first complaint was filed. *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

"In determining if the first-filed rule applies, the court must carefully consider whether in fact the suits are duplicative." *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 235 (D. Conn. 2003) (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 133 (2d Cir. 2000)). Application of the rule requires that both cases have identical or substantially similar parties and claims. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). Importantly, the rule does not require identical parties in both cases, but merely requires "substantial overlap." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *Maclaren v. B–I–W Group, Inc.*, 329 F. Supp. 545, 547 (S.D.N.Y. 1971).

## II. Exceptions to the First-Filed Rule

After a movant has successfully established a presumption that the first-filed rule applies, a non-movant can rebut it by submitting "proof of the desirability of proceeding in the forum of the second-filed action." *Emp'rs Ins. of Wausau*, 522 F.3d at 275 (quoting *Berisford Capital Corp. v. Cent. States, Se. & Sw. Areas Pension Fun*d, 677 F. Supp. 220, 222 (S.D.N.Y. 1988)). The Second Circuit has recognized two exceptions to the first-filed rule: (1) where the "balance of convenience" favors the second-filed action, and (2) where there are "special circumstances," such

as where the first-filing plaintiff files an "improper anticipatory action" in an apparent effort to win the race to the courthouse, or "where forum shopping alone motivated the choice of situs for the first suit." *Id.* at 275–76. The non-movant bears the burden of overcoming the first-filed rule's presumption by showing that "equitable considerations recommend the later action." *GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998).

## DISCUSSION

### I. This Court Will Determine Whether the First-Filed Rule Applies

As an initial matter, the Court recognizes that "[c]ourts are divided as to whether the first-filed court or the court from the subsequent action [determines whether] the first-filed rule" applies. *See Baduria v. Sealift Holdings, Inc.*, 451 F. Supp. 3d 248, 253 n.2 (E.D.N.Y. 2020) (citing *Michel v. Petco Animal Supplies Stores, Inc.*, 404 F. Supp. 3d 685 (E.D.N.Y. 2017); *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235 (E.D.N.Y. 2012); *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 267 (S.D.N.Y. 2002)).

In view that the Mississippi Court has already expended a great deal of judicial resources (*i.e.*, the parties' motions to dismiss and for summary judgment), stayed its own action for nearly a year pending the resolution of the instant motion, and has already set a trial date (Mississippi Action, ECF No. 121), in the interest of an efficient judicial administration and the conservation of its resources, this Court will determine whether the first-file rule applies in this case. *See First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989) ("The first to file rule embodies considerations of judicial administration and conservation of resources."). Such decision reinforces the rule's effort to avoid confusion and conflict among the district courts, see *Raytheon Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 353 (S.D.N.Y. 2004), particularly because the Mississippi Court stayed the Mississippi Action pending this Court's

6

determination on whether the instant action should be transferred there. (*See* Mississippi Action, ECF No. 106.)

Indeed, "[t]he first-filed rule should not be applied mechanically." *Raytheon*, 306 F. Supp. 2d at 353. "Ample discretion is left to the lower courts in administering multifaceted litigation; courts are not to apply rules rigidly or mechanically." *Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 463 (S.D.N.Y. 2002) (citations omitted). Besides, in at least one occasion, the Second Circuit has held that a district court did not abuse its discretion in determining whether the first-filed rule applied despite the first case being filed in the Eastern District of Louisiana. *See Baduria*, 451 F. Supp. 3d at 253 n.2 (citing *Lafarge*, 599 F.3d at 113)). That said, the Court now proceeds to address the parties' arguments.

By their motion, Defendants argue that the first-filed rule applies here because (1) the Mississippi Action was filed first; (2) there is substantial overlap between the issues, evidence, and parties of the Mississippi Action and the instant one; (3) there are no "special circumstances" warranting a deviation from the first-filed rule; and (4) the balance of the convenience factors favors transferring the instant action to the Mississippi Court. (*See* Mot. at 11–25.)

In opposition, FAF avers that the first-filed rule does not apply because (1) the two actions are neither duplicative nor substantially overlap; (2) two "special circumstances" exist here as Defendants filed an improper anticipatory declaratory judgment action in the Mississippi Court and have engaged in forum shopping; and (3) the balance of the convenience factors favors keeping the instant action in this Court. (Resp. in Opp'n at 15–28.)

Following the steps of the first-filed rule analysis, the Court analyzes the parties' arguments by first determining whether Defendants sufficiently establish a presumption that the rule applies here, and then determining whether an exception applies.

## II. Defendants Sufficiently Establish the Presumption of the First-Filed Rule

The parties do not dispute that the Mississippi Action qualifies as the first instituted suit because SPI commenced it on September 2019, three months before FAF filed the instant action. Instead, the parties' main point of contention concerns whether the two suits substantially overlap.

Defendants aver that both suits "arise out of the same underlying transactions and occurrences"—namely, "the rights to use and market the sensory path stencils and decals that each side claims to have created and used in the relevant market." (Mot. at 14, 22.) They further aver that there is substantial overlap in the evidence and testimony in both actions because it involves the same work or product for which the facts are logically connected and must be resolved in a single proceeding. (*Id.* at 22–23.) On that basis, Defendants argue that FAF must have asserted the copyright infringement claim from the instant action as a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) in the Mississippi Action. (*Id.* at 23–24.)

But FAF contends that both suits do not arise out of the same circumstances because "the facts necessary to prove SPI's copying of [FAF]'s designs [in the instant action] and the facts necessary to prove SPI's trademark infringement and unfair competition" do not substantially overlap. (Resp. in Opp'n at 26.) Specifically, FAF contends that "[t]he determination of whether SPI infringed [FAF]'s federally-registered copyrights in its artwork will be based solely on a comparison of [its] copyrighted artwork and SPI's infringing artwork," which is totally irrelevant as to whether SPI's alleged trademark is "descriptive" and has acquired "secondary meaning." (*Id.* at 26–27.) FAF similarly argues that the determination of damages differs between its copyright infringement claim in the instant action and SPI's claims in the Mississippi Action. (*Id.* at 27.) But after due consideration, the Court concludes that the two suits substantially overlap.

In determining whether there is a "substantial overlap," courts must look to the underlying transaction on which the claims are based: "That claims arising out of the same transactions may

rely on different legal theories does not eliminate their redundance." *Sheinbrot v. Pfeffer*, 954 F. Supp. 555, 561 (E.D.N.Y. 1997) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Another test for whether a lawsuit is duplicative is to ask whether the claim brought in the second-filed action should have instead been raised as a counterclaim in the first-filed action. *See, e.g.*, *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (vacating the district court judgment and ordering the district court to dismiss an action that should have been raised as a compulsory counterclaim in the first-filed action); *see also* Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.").

"To determine when two claims arise from the same 'transaction and occurrence,' courts consider whether the 'essential facts of the various claims are so logically connected that consideration of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 17 (E.D.N.Y. 1997) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)). Such determination does not require "an absolute identity of factual backgrounds . . . but only a logical relationship between them." *Id.* (quoting *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213, 216 (2d Cir. 1955)).

To be sure, the Court agrees with FAF that the parties' respective claims against each other in both actions arise under different legal theories and assert different harms. For instance, in the Mississippi Action, SPI claims that FAF infringed its alleged trademark by using the term "sensory path," and that it engaged in unfair competition and false designation of origin by passing off its own products as those of SPI. (*See* Mississippi Action, ECF No. 1). In contrast, in the instant

9

action, FAF claims that SPI infringed its copyright protecting specific graphic designs that SPI allegedly copied and sold for profit. (*See generally* Compl.; Am. Compl.); *see also Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 781 (2d Cir. 1994) (noting that the Copyright Act and the Lanham Act address different harms) ("Through a copyright infringement action, a copyright owner may control who publishes, sells or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used."); *Dodd v. Fort Smith Special School District No. 100*, 666 F. Supp. 1278 (W.D. Ark. 1987) (distinguishing between claims asserted under the Copyright Act and the Lanham Act that involved the same work: a biographical book).

But while the parties assert different intellectual property rights and harms through their respective claims, *all* claims in both actions, including FAF's own counterclaims for false designation of origin and unfair competition before the Mississippi Court (Mississippi Action, ECF No. 78), involve the same work or product—namely, the stencils and decals the parties' sell as their own in competing against each other. Significantly, the issue at the core of both actions is whether the parties created their own products independently from one another. (*Compare* Mississippi Action, ECF No. 1 ("Ms. Clay began the initial development phase for the Sensory Path in 2007, which included conducting classroom movement trials to identify correlations between specific movements and rate of cognition.") *with* Am. Compl., ECF No. 28 ("[Ms. Gunther] conceived of a business of offering playground stencils when volunteering for her son's school committee in 2006 to upgrade the playground.").) It follows then, that if Defendants were to successfully establish in the Mississippi Action that they independently created the relevant stencils and decals, they could presumably also assert a defense against FAF's copyright claim in

the instant action. *See Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014) ("Independent creation is a defense to copyright infringement.").

In short, the Court agrees with Defendants that the parties' claims in both actions substantially overlap because they all revolve around "the rights to use and market the sensory path stencils and decals that each side claims to have created and used in the relevant market." (Mot. at 22.). Such conclusion further suggests that FAF should have asserted the copyright infringement claim in the instant action as a compulsory counterclaim at the inception of the Mississippi Action. Courts around the country, including within this Circuit, have found that claims for infringement of intellectual property rights and for declaratory judgment of non-infringement of those same rights are compulsory counterclaims of one another. *See, e.g.*, *Intervet, Inc. v. Merial Ltd.*, 535 F. Supp. 2d 112, 114–15 (D.D.C. 2008) (dismissing a patent infringement claim so that the claim could be brought as a compulsory counterclaim in an earlier-filed action for a judicial declaration of non-infringement of the subject patent); *SAS Inst., Inc. v. Practicingsmarter, Inc.*, 353 F. Supp. 2d 614, 618–19 (M.D.N.C. 2005) (dismissing claims for copyright infringement and common-law torts in favor of an earlier-filed declaratory judgment action seeking a judicial declaration of non-infringement of the copyright); *J. Lyons & Co. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 492–93 (S.D.N.Y. 1995) (dismissing a trademark infringement lawsuit in favor of earlier-filed actions for judicial declarations of non-infringement of the trademark that were pending in other courts); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 801–02 (Fed. Cir. 1999) ("every court that has discussed the issue has recognized that an infringement counterclaim is compulsory in an action for declaration of non-infringement" in patent cases) (collecting cases)); *Touchpoint Commc'ns, LLC v. Dentalfone, LLC*, No. 3:15-CV-05240-JRC, 2016 WL 524260, at *4 (W.D. Wash. Feb. 10, 2016) ("Given the

'historic kinship between patent law and copyright law,' there should be the same result whether it is patent infringement or copyright infringement." (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 887 (9th Cir. 2005))).

FAF nonetheless argues that this Court is the only proper forum for its copyright infringement claim because the Mississippi Court has already decided that it has no personal jurisdiction over FAF for purposes of SPI's claim for declaratory judgment of non-infringement of copyright. (Resp. in Opp'n at 16.) But FAF would be correct only if (a) SPI's claim for declaratory judgment of non-infringement of copyright had been the *sole* claim in the Mississippi Action; or (b) the remaining claims in the Mississippi Action did not substantially overlap with the one here.

Certainly, had SPI's claim for declaratory judgment of non-infringement of copyright been the *sole* claim in the Mississippi Action, then FAF could not have been compelled under Rule 13(a) to assert its copyright infringement counterclaim in the Mississippi Court. First, FAF properly asserted its Rule 12(h) defense for lack of personal jurisdiction in a pre-answer motion. Second, the Mississippi Court dismissed SPI's declaratory claim for lack of personal jurisdiction because "[t]here [were] no activities documented in the record that were undertaken by [FAF and Gunther] in Mississippi[,] . . . aside from two cease-and-desist letters, which [were] insufficient . . . to support jurisdictional control" over them. *Sensory Path*, 2020 WL 5260390, at *6. And third, FAF would not have waived its jurisdictional defense merely by asserting counterclaims against SPI before the Mississippi Court ruled on its pre-answer motion. *See Matter of Arbitration Between InterCarbon Bermuda, Ltd. and Caltex Trading & Transport Corp.*, 146 F.R.D. 64, 69 (S.D.N.Y. 1993) (holding that compulsory counterclaims do not waive jurisdictional defense). Otherwise, FAF would have been barred from bringing its copyright infringement claim in a later lawsuit just

because it failed to assert it in the Mississippi Action despite the futility of SPI's declaratory judgment claim—a result that runs counter to the principles of fairness and equity. *See Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000) ("If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit." (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1 (1974)).

But here, the Mississippi Court is still entertaining other claims that it has neither dismissed nor granted summary judgment against them (including SPI's remaining claims and FAF's counterclaims), all of which, as discussed above, substantially overlap with the FAF's claim for copyright infringement in the instant action. *See Sensory Path*, 2021 WL 4768247, at *7 (denying summary judgment against SPI's remaining claims). Further, the Mississippi Court's dismissal of SPI's declaratory judgment claim is inconsequential. While the Mississippi Court may have ruled that it lacked personal jurisdiction over FAF as a defendant for purposes of such claim, such ruling is not equally applicable over SPI as a counter-defendant were FAF to assert a compulsory counterclaim for copyright infringement. (*See* Am. Compl. ¶¶ 2–4 (alleging that Defendants are all Mississippi residents).)

Put into context: had SPI commenced the Mississippi Action asserting all the same claims against FAF, except for the one seeking declaratory judgment of non-infringement of copyright, because of the substantial overlap between those claims and FAF's copyright infringement claim pending before this Court, then FAF should have brought its claim as a compulsory counterclaim in the Mississippi Action. Otherwise, litigating both actions simultaneously in separate forums would be contrary to the purpose of Rule 13, which is to preserve scarce judicial resources and preventing inconsistent judicial determination and verdicts on similar issues. *See Southern Const. Co. v. Pickard,* 371 U.S. 57, 60 (1962) ("Rule 13(a) 'was designed to prevent multiplicity of

13

actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.'").

Therefore, the Court finds that Defendants have sufficiently established a presumption that the first-filed rule applies. The Court now determines whether FAF overcomes this presumption by showing that an exception applies here.

### III. FAF Fails to Establish an Applicable Exception

In rebutting the presumption that the first-filed rule applies here, FAF argues that two "special circumstances" are present here: the "improper anticipatory action" and the "forum shopping" exceptions. (Resp. in Opp'n at 16–20.) Alternatively, FAF argues that, even if no "special circumstances" are present here, the "balance of convenience" favors keeping its copyright infringement claim here. (*Id.* at 20–28.)

### A. Improper Anticipatory Action

FAF first avers that SPI commenced the Mississippi Action immediately after receiving two cease-and-desist-letters in which FAF purportedly directly threatened litigation against SPI for its alleged copyright violations. (*Id.* at 17–18.) Indeed, SPI filed the Mississippi Action exactly one day after receiving FAF's second cease-and-desist letter. (*Compare* Clay Aff., Ex. C *with* Mississippi Action, ECF No. 1.) But Defendants nonetheless contend that the language in these two cease-and-desist letters reveals no absolute intention to commence litigation and rather "invites negotiations and are indicative of settlement." (Mot. at 16.) Defendants claim the only direct threat in these letters is that FAF would seek Digital Millennium Copyright Act ("DMCA") takedown notices[1] against SPI. (Reply at 4.) After due consideration, the Court concludes that FAF fails to establish that the "improper anticipatory filing" exception applies here.

---

[1] The DMCA creates a "notice" and "takedown" regime under which a person who thinks that his material is being displayed on the internet in violation of copyright law can send a notice to an internet service provider.

An improper anticipatory filing is "one made under the apparent threat of a presumed adversary filing the mirror image of that suit" in another court. *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995); *see also CGI Solutions LLC v. Sailtime Licensing Grp., LLC*, 05 Civ. 4120(DAB), 2005 WL 3097533, at *3 (S.D.N.Y. Nov. 17, 2005) ("An anticipatory filing happens when a party files an action, most often for declaratory judgment, in response to a 'notice-of-suit.'" (citations omitted)). It is improper for a party to launch a preemptive strike by racing to the courthouse in his preferred forum before his adversary has a chance to file their action in the forum of their choice, and such a party should not benefit from the first-filed rule. *See Ontel Prod.*, 899 F. Supp. at 1151; *Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 223 (S.D.N.Y. 1999) (declining to apply first-filed rule where plaintiff in first action "won the race to the courthouse under questionable circumstances"). For that reason, a court will dismiss a first-filed action where "it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose." *Ontel Prods.*, 899 F. Supp. at 1150.

Courts assess how clearly an opponent threatens litigation to determine whether an exception to the first-filed rule applies. *See AFA Dispensing Grp. B.V. v. Anheuser–Busch, Inc.*, 740 F. Supp. 2d 465, 470 (S.D.N.Y. 2010). Courts have generally found declaratory actions to be improper anticipatory filings when "filed in response to demand letters that give specific warnings as to deadlines and subsequent legal action." *BuddyUSA, Inc. v. Recording Indus. Ass'n of Am.*, Inc., 21 F. App'x 52, 55 (2d Cir. 2001); *see, e.g.*, *Chicago Ins. Co. v. Holzer*, No. 00 CIV. 1062 (SAS), 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (notice letter provided a specific time frame in which the lawsuit would commence); *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F.

---

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *3 n.2 (N.D. Cal. July 8, 2011).

15

Supp. 993, 996 (S.D.N.Y. 1990) (declaratory judgment action filed after receipt of formal notice of default containing deadline); *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) (declaratory judgment action filed after receipt of notice of suit containing deadline); *Equipos Nucleares, S.A. v. Fairfield Energy Venture, L.P.*, No. 88 Civ. 7543, 1989 WL 6628, at *2 (S.D.N.Y. Jan. 23, 1989) (suit filed one day after plaintiff was notified of defendant's imminent filing of interpleader action in Maine); *Philipp Bros., Inc. v. Schoen*, 661 F. Supp. 39, 43 (S.D.N.Y. 1987) (suit filed "immediately after [plaintiff] was informed of defendant's intention to bring the California action"); *and Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977) (declaratory judgment action filed after plaintiff received defendant's own draft complaint), *aff'd*, 573 F.2d 1288 (2d Cir. 1978).

By contrast, courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly "inform[ ] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit. . . ." *BuddyUSA*, 21 F. App'x at 55 (quoting *J. Lyons & Co.*, 892 F. Supp. at 491); *see, e.g.*, *J. Lyons & Co.*, 892 F. Supp. at 491 (demand letter mentioned "the possibility of legal actions" without specifying date or forum); *800– Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132–33 (S.D.N.Y. 1994) (declaratory judgment action filed in response to plaintiff's business-related threats and comments to defendant's customers about potential litigation, did not warrant exception to the first-filed rule); *and Emp'rs Ins. of Wausau*, 763 F. Supp. at 49 (party's letter expressing a "hope . . . to avoid litigation" did not provide adversary with sufficient notice of impending litigation).

Here, FAF's first cease-and-desist letter, dated August 22, 2019, contains the following relevant language:

> Please be advised that [FAF] will not hesitate to enforce its intellectual property rights against infringing acts to the fullest extent of the protection enjoyed in its

16

> intellectual property under the Copyright, Trademark and Unfair Competition laws. In view of your willful actions, [FAF] has the right to seek not only an accounting for damages, but also enhanced damages, an award of its attorney's fees, pre and post judgment interest, injunctive relief, impoundment and destruction of infringing inventory, and other remedies.
> . . .
> Unless you notify us immediately that you will promptly comply with the foregoing demands, we will be forced to take appropriate action to protect our client's valuable legal rights, including, injunctive relief, compensatory damages, enhanced damages, disgorgement of your profits from infringing activities and attorney fees under the Copyright Act and applicable state laws in federal district court.

(Clay Aff., Ex. B, ECF No. 36-1.) Evidently, this letter mentions the possibility of legal action in the form of a lawsuit and FAF's lack of hesitation to enforce its intellectual property rights. Yet, the letter fails to provide sufficient notice of an imminent lawsuit because the letter makes no reference to a specific forum, filing date, or any potential deadlines after which FAF would resolutely initiate litigation.

Meanwhile, FAF's second cease-and-desist letter, dated September 25, 2019, contains the following relevant language:

> If we do not receive an appropriate substantive response from you by **October 4, 2019**, [FAF] will have no choice but to demand that your web hosts remove the infringing material from your website and social media pages. If you continue to be uncooperative, [FAF] may also take other appropriate legal action, including, but, not limited to an infringement suit in federal district court seeking injunctive relief, compensatory damages, enhanced damages, disgorgement of your profits from infringing activities and an award of attorney fees and costs under the Copyright and Lanham Acts as well as applicable state laws.

(Clay Aff., Ex. C (bold and underlining in original).) Certainly, this second letter includes a specific deadline and reiterates the possibility of legal action in the form of a lawsuit. But while it does include a specific deadline, this letter only warns that the imminent action FAF would pursue if SPI failed to respond by such deadline was not a lawsuit, but rather, a "demand that your web hosts remove the infringing material from your website and social media pages"—a DMCA takedown noticeagainst SPI. (*Id.*) Moreover, like the first letter, this second letter fails to provide

17

sufficient notice of an imminent lawsuit because it similarly fails to mention a specific forum, filing date, or any potential deadlines after which FAF would resolutely initiate litigation against SPI.

Indeed, the second letter's vague language denotes uncertainty as to whether or when FAF would initiate legal action against SPI. (*See id.* ("*If you continue to be uncooperative*, [FAF] *may* also take appropriate legal action[.]" (emphasis added).) This vague language is in stark contrast with the demand letters' unequivocal language that courts found provide specific warnings of imminent legal action. *See, e.g.*, *242 Partners, L.P. v. Sean Gelb*, No. 12 CV 2561 HB, 2012 WL 2309060, at *2 (S.D.N.Y. June 18, 2012) (recipient received a copy of the draft complaint with a specific date for its filing); *Anheuser-Busch*, 740 F. Supp. 2d at 470–71 ("Here, the Notice of Dispute states in relevant part that A–B 'has until 5PM EDT Friday July 16 to unequivocally confirm its commitment to perform under our [Supply] Agreement or it will face an injunction motion.'"); *Holzer*, 2000 WL 777907, at *3 (notice letter stated that if the recipient's decision "remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours"); *Great Am. Ins*, 735 F. Supp. at 586 ("The facts of the instant case are clear: plaintiff received notice that, absent a satisfactory resolution, defendant would file an action against plaintiff in Texas on June 25, 1989.").

In view thereof, the Court concludes that FAF fails to establish that the "improper anticipatory filing" exception applies here.

### B.  Forum Shopping

FAF next similarly avers that SPI commenced the Mississippi Action and purposefully bootstrapped other "irrelevant" claims motivated by a desire to gain "home court advantage" in preempting FAF's claim for copyright infringement. (Resp. in Opp'n at 20.) But the Court readily dismisses FAF's argument. To begin, as discussed above, SPI's other remaining claims and FAF's

18

own counterclaims in the Mississippi Action substantially overlap with FAF's copyright infringement claim in this Court. Furthermore, the Mississippi Court has already denied FAF's motions to dismiss and for summary judgment against SPI's other remaining claims. Put another way, if SPI's other remaining claims were so meritless that they merely functioned as "jurisdictional bootstrap," then the Mississippi Court would have already dismissed them in resolving either of FAF's previous motions. Thus, the Court concludes that FAF fails to establish that the "forum shopping" exception applies here.

### C.    Balance of Convenience

Finally, FAF avers that the "balance of convenience" favors denying transfer to the Mississippi Court and keeping the instant action before this Court. (Resp. in Opp'n at 20). But after weighing the factors, the Court concludes the opposite.

Factors that courts consider in assessing the balance of convenience include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Emp'rs Ins. of Wausau*, 522 F.3d at 275 (alteration in original) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006)). "An even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule." *Id.* at 275 (quoting *Schneider*, 435 F. Supp. at 751).

### 1.    Forum

While FAF's choice of forum is this Court, venue in a copyright infringement action is proper in a judicial district where the defendants reside. *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009) (citing 28 U.S.C. § 1400(a)); *see also* 28 U.S.C. § 1391(c) ("A corporation is deemed to reside in any jurisdiction in which it is subject to personal

jurisdiction."). Thus, as Defendants are indisputably Mississippi residents, they are subject to personal jurisdiction in the Mississippi Court. Accordingly, this factor favors transferring this action.

### 2. Convenience of Witnesses and Availability of Process to Compel Attendance of Unwilling Witnesses

When assessing the convenience of witnesses, a court must do more than merely compare the number of witnesses who reside in the current forum to the number located in the proposed transferee forum, but should instead assess the materiality, nature, and quality of the testimony that the witnesses are likely to provide. *Herbert Ltd. P'ship v. Electronic Arts Inc.* 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). But generally, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.,* 581 F.Supp.2d 542, 547 (S.D.N.Y. 2008).

With that in mind, it is often presumed that employees of a party are available in any venue. However, several courts have interpreted Federal Rule of Civil Procedure 45(c)(3)(A)(ii), which directs a court to quash a subpoena that requires a person who is "neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person," to mean that "non-officer employees of a party are to be considered non-party witnesses." *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 290 (citing cases).

Here, both factors favor transfer to the Mississippi Court. The key witnesses for FAF's claim for copyright infringement will be SPI's officers and employees who are knowledgeable about the designs, production, and sale of the relevant stencils and decals. *See AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004) (noting that "key witnesses" in copyright infringement case are "officers and employees who were involved in the

20

design, production, and sale" of the allegedly infringing products) Defendants assert that such witnesses are predominantly located in Mississippi. (Clay Aff. ¶¶ 14, ECF No. 36-1.)

Although the testimony of FAF's employees and executives who reside in New York and New Jersey will also be relevant (see Resp. in Opp'n at 21), Defendants' employees are more likely to provide testimony material to the outcome of this case. "[FAF's] employees will testify about the ownership and validity of their copyrights, their investigations of the Defendants' alleged infringement, and the damages caused thereby." *VideoEgg*, 611 F. Supp. 2d at 367. "Testimony about the ownership or validity of the registered copyrights at issue, however, will hardly be lengthy or nuanced." *Id.* Furthermore, FAF's ownership of the allegedly infringed copyrights is relatively easily established and may very well be the subject of a stipulation by the time of trial. And while FAF's employees may also testify about injury and damages, "these subjects are commonly addressed by expert witnesses, whose convenience is not relevant" in analyzing the balance of convenience. *See Glass v. S & M NuTec, LLC*, 456 F. Supp. 2d 498, 502 (S.D.N.Y. 2006) ("[I]t is well settled that the location of expert witnesses is irrelevant to a transfer decision.").

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

"In an era of electronic documents, easy copying and overnight shipping," the location of documents and other evidence "assumes much less importance than it did formerly." *ESPN,* 581 F. Supp. 2d at 548. Nevertheless, "in infringement cases, it makes sense that 'the bulk of the relevant evidence usually comes from the accused infringer'" and in such cases this factor weighs in favor of transfer to "the place where the defendant's documents are kept." *Id.* at 548–49 (quoting *Millennium, L.P. v. Hyland Software, Inc.,* No. 03 Civ. 3900(DC), 2003 WL 22928644, at *4 (S.D.N.Y. Dec.10, 2003)). Thus, this factor favors transfer to the Mississippi Court.

4.    Locus of Operative Facts.

"The operative facts in infringement cases usually relate to the design, development and production of an infringing product." *VideoEgg*, 611 F. Supp. 2d at 367–68 (citations omitted). Here, Defendants claim to have designed, developed, and produced their stencils and decals in Mississippi. Although FAF argues that there is a connection to this Court based on Defendants' New York sales, "[w]here the nexus of the allegedly infringing activity[—that is, the copying of the product—]is [in Mississippi], it is insufficient to find a connection to New York based solely on sales of the product that took place here." *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 119 (S.D.N.Y. 2005). Accordingly, this factor favors transfer to the Mississippi Court.

5.    Convenience of the Parties and their Relative Means.

"Courts also consider the convenience of the parties, and where disparity exists between the parties, the relative means of the parties." *VideoEgg*, 611 F. Supp. 2d at 367 (citations omitted). Here, the Court agrees with FAF that the "relative means of the parties" factor is neutral because the record contains no definitive evidence indicating any significant disparity between the parties. However, the Court agrees with Defendants that the "convenience of the parties" factor favors transfer because both parties are already litigating other claims that substantially overlap in the Mississippi Court. Simply put, FAF "will not suffer any additional inconvenience if this action is transferred . . . because it will have to participate in the Mississippi Action regardless of whether the copyright claim in [the instant] action is transferred." (Mot. at 19.) Indeed, not transferring the case would cause additional inconvenience to *both* parties because they would have to litigate in both forums simultaneously.

In any event, the Mississippi Court already ruled that if the instant action is transferred there, "SPI will not oppose [FAF's] motion for leave to amend the counterclaim in this action to include the claims currently pending in [this Court]." (Mississippi Action, ECF No. 106.) As such,

any inconvenience FAF would suffer is mitigated because it would suffer no prejudice under Rule 13(a) for having failed to assert its claim for copyright infringement as a compulsory counterclaim in the Mississippi Action.

In sum, six convenience factors favor transfer and only one is neutral. Accordingly, the balance of convenience favors transferring the instant action to the Mississippi Court for consolidation with the action there.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or transfer is GRANTED with respect to Defendants' request to transfer the instant action to the Northern District of Mississippi. The Clerk of Court is directed to terminate the motion at ECF No. 36.

Dated: January 12, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge